In this suit, brought to reform certain mortgages, deeds and other documents, and relieving complainant from the consequences of mistakes asserted to have been made in the execution thereof, was first before this court on a motion to strike the bill of complaint. The decision of the court on the motion is found in126 N.J. Eq. 130. The court there laid down the rule that the complainant was not entitled to reformation on the ground of mutual mistake, since the mistake, if any, was not a mutual one because the present parties interested were not mutually involved in the transaction in which the mistake occurred. The opinion then rendered disposes of this aspect of the suit. The court, on the motion to dismiss, however, allowed the case to go to final hearing on the ground that testimony might show that the conduct of the defendants might have constituted such an estoppel or acquiescence as would entitle plaintiff to relief. Certain of the facts shown are set forth in the statement of facts *Page 189 
contained in the opinion previously filed herein, with the exception, which does not affect the argument, that it was not complainant, but her husband of whose estate she became executrix, that purchased one of the mortgages referred to. It appeared that in 1937 one Cmoch bought three adjoining lots known as Lots Nos. 16, 17 and 18. On June 10th, 1927, he executed a mortgage covering Lot 18 and the southerly one-half of Lot 17 to one Herman C. Rust, who on the 15th day of June assigned it to Charles Binns, the husband of complainant. The assignment was recorded June 22d 1927, and the mortgage recorded July 5th, 1927. On July 1st, 1927, Cmoch mortgaged the rest of the parcels, namely, Lot 16 and the northerly one-half of Lot 17, to Herman C. Rust, who on the 15th day of August, 1927, assigned the mortgage to defendants. The mortgage was recorded July 12th, 1927, and the assignment recorded August 26th, 1927.
In 1933, both these mortgages were foreclosed, the same persons being defendants in both suits, namely, Cmoch, his wife, Herman C. Rust, as the holder of the second mortgage on the entire premises, and two of Cmoch's judgment creditors. Complainant, as executrix of the estate of her husband, brought the foreclosure suit under the mortgage held by her, and in each case the steps taken by her were prior to those taken by defendants in their foreclosure suit. She started her suit January 18th, 1933, and took title to the premises described in the mortgage, namely, Lot 18 and the southerly one-half of Lot 17, by sheriff's deed, dated May 23d 1933, recorded June 13th, 1933. Defendants began their foreclosure suit January 30th, 1933, against the premises described in their mortgage, namely, Lot 16 and the northerly one-half of Lot 17, and took title thereto by sheriff's deed, dated July 3d 1933, recorded July 13th, 1933. On the 23d day of May, complainant entered upon and took possession of, and ever since has been in possession of, not the lot and the half to which she acquired the sheriff's deed on that day, namely, Lot 18 and the southerly one-half of Lot 17, but of the adjoining lot and a half, Lot 16 and the northerly one-half of Lot 17. At this time, it will be noted defendants had *Page 190 
not acquired title to the premises of which possession was taken by complainant, since defendant's title was not acquired by sheriff's deed in the foreclosure suit then pending until July 3d 1933. On July 3d 1933, however, defendants did take possession of Lot 18 and the southerly one-half of Lot 17 and have been in possession ever since.
It thus appears that complainant and defendants have each been occupying premises to which the other party had the record title. It would seem that each of the parties supposed that the mortgage actually held and foreclosed by each of them was for the adjoining tract, and it does not appear that either of them intended to take the premises of the other. It does not appear that defendants had any idea that they were occupying the wrong premises or were entitled to the premises occupied by complainant until shortly before the filing of this suit. Upon discovering the error in occupancy, defendants brought an ejectment suit, which has been held in abeyance pending the determination in this suit.
Some time, apparently shortly subsequent to the taking of title by the respective parties, the two parcels were given numbers and the premises consisting of Lot 16 and the northerly one-half of Lot 17 have since been known as 244 Carlton avenue and the remaining lot and a half, as 246 Carlton avenue. It would appear from the testimony that complainant's son, who managed the property for her, must have been put on some sort of inquiry as to a defect in the title of the premises in possession of his mother, since he received tax bills made out against the premises known as 246 Carlton avenue, and instead of investigating, changed the numbers on the tax receipt to correspond with the premises actually in possession of his mother.
It will be noted that defendants had no dealings whatever with complainant or her husband in connection with the mortgage, the assignment, or the foreclosure of complainant's mortgage, and that complainant moved into the wrong premises before defendants had acquired title to them in their foreclosure suit. Neither at that time nor at any subsequent time can it be said that complainant's acts were in any way *Page 191 
brought about or induced in any fraud or misrepresentation on the part of defendants. The mistakes of complainant and her husband in each case were originated in acts with which defendants had nothing to do, and in each case preceded any act by defendants. Defendants were, of course, laboring under the same mistake as complainant as to the premises covered by the respective mortgages, but defendants promptly took steps to assert their rights as soon as they discovered they were on the premises not covered by their deed. Under these circumstances, I cannot find that there is any ground for invoking the doctrine of estoppel or acquiescence against the defendant.
"To constitute an equitable estoppel, the defendant must have done an act, or made an omission, the natural effect of which was to influence the conduct of the complainant, and which has induced him to change his position or condition, so that, if the defendant is afterwards permitted to deny the truth of his words or conduct, the complainant must suffer harm." Mutual LifeInsurance Co. v. Norris, 31 N.J. Eq. 583.
"Fundamentals of equitable estoppel in pais, are that party against whom estoppel is urged has made representation or concealment of material facts inconsistent with present claim when he knew or should have known facts to be otherwise, or pretended to know facts which he did not know with intent to influence conduct of another, and that party to whom representation was made was ignorant of facts, has no convenient opportunity to ascertain them, and relied thereon in good faith and was thereby prejudiced." Briscoe v. O'Connor, 119 N.J. Eq. 378.
 A decree will be advised dismissing the bill. *Page 192